Please call the next case. 0HS3278BHS of Illinois, Inc. v. Joyce, M.D. Good morning. Good afternoon. I'm sorry, good morning. It just seems like it's been that long. Before we get started, on the Appalachian side, how are you planning to divide your time? I'm going to start, Justice Kennedy. And who do you represent? My name is Julie Tischer, and I represent Dr. Zawadki, the Suburban Surgical. And when you say you're going to start, you each have 15 minutes for your side. Have you decided among or between you how you're going to divide that time? Yes. Okay. Okay. Good morning, and may it please the Court, Counsel. My name is Michael Rieses, and I'm here this morning on behalf of McNeil Hospital as appellant. I would have 15 minutes, and if I could carve out a five-minute rebuttal. The issue in this case is what limitation period applies to the hospital's implied indemnity implied indemnification claim against two physicians. We submit that the five-year statute in 13-205 is the appropriate statute. The two-year statute in 13-204 does not apply because of a specific exception in subsection E, where indemnity is sought from a party whose negligence, and if I can read this, quote, resulted in injuries or death by reason of medical malpractice, close quote. That seems clear enough. 13-212A we submit respectfully is inapplicable because by its terms it applies for damages, and I want to read the exact language, quote, arising out of patient care, close quote. And our position is that McNeil's counterclaim for implied indemnity is not an action, quote, arising out of patient care, close quote, but rather based upon this quasi-contractual duty to indemnify based on a pre-tort relationship. Why does contribution arise out of patient care in a quasi-contractual implied indemnity? Well, now Hayes tells us that for contribution we're looking at the contributor's liability or obligation to pay damages by reason of its tort liability owed to the plaintiff. That's what Hayes tells us. That's the answer. Whereas we have subsequently been instructed, if I can go on, based on the more recent Supreme Court case in Travelers v. Bowman, that when we are looking at an indemnification claim, whether it's implied or expressed, we are looking at the doctor's liability to the hospital. It is the plaintiff in the implied indemnity action. We are not looking at the doctor's liability to the original plaintiff, and we are not looking at, as is true in Hayes for contribution, the hospital's liability to the original plaintiff, Helen Aldrich. In contribution, why aren't we looking to the liability of the tortfeasor who has not paid his appropriate share to the tortfeasor who has paid more than his appropriate share? Why aren't we looking? Why isn't that the essence of a contribution? The essence of a contribution claim, as Hayes tells us, is, beginning with the statute, the statute talks about having a common liability in tort where the contribution plaintiff has paid more than its pro rata share, right? So we are looking at beginning with the contribution plaintiffs toward obligation to the original plaintiff. That's not what we are looking at with implied indemnification, or I should say with any indemnification claim. That is not a fault-based claim. That's not a damage apportionment claim at all. It is instead based upon this pre-tort relationship between the hospital as the blameless principal and its doctors, the doctors who have been sued and allegedly are its apparent agents. And we submit that we complied with the five-year statute of limitations because it did not begin to run until we settled with the plaintiff on July 25, 2008, and we timely filed our counterclaim against the doctors who had already been sued by the plaintiff the following month. If we are correct, the judgment below cannot stand. Now, yes. Yes. McNeil's cross-claim against doctors. Zawacki and Joyce. Zawacki and Joyce. It's inextricably linked to the underlying malpractice action, right? I don't know that I could agree to that in light of Travelers v. Bowman, where the court said that construction-related activity. Now, under the facts of this case, I mean, Mrs. Ulrich and her husband sued because of a botched bypass. Correct. Gastric bypass. That's a malpractice action. They didn't sue because of a breach of contract or because someone dropped a piece of heavy equipment on her foot. It was a malpractice action. That's right. Okay. So that's inextricably linked to this. So are you saying in all malpractice actions you have a fine if the hospital is seeking contribution? Well, actually, they don't claim it's contribution. That's right. It's not contribution. You claim indemnification. They say contribution. If the hospital is seeking this, the five-year statute always applies? I mean, I'm not sure why it applies in this case but not in others. Let me be very clear. First of all, we are not challenging Hays, which dealt with contribution. If we were suing the doctors for contribution, we are going to be subject to the 13212 statute of opposition. In Hays, the Supreme Court rejected the very argument that you're making, and I need you to pass it. It says here, it says in Hays, Nevertheless, we must still determine whether an action for damages provided in the medical malpractice statute in the code includes a third-party action for contribution or, as the plaintiff contends, is limited to only a direct action by the insured party. Plaintiffs assert that their third-party action against the defendant are not for recovery of damages sustained by the original plaintiff but instead are redressed seeking the enforcement of an equitable duty to share liability. What is quasi-contractual implied indemnity? It is not an equitable duty to reimburse. It is not a duty to, quote, share liability, is it? It's an equitable duty. But read the last few words. Share liability. I'm not sharing liability with them. They're paying me so that I have no liability. It's a blameless principle. Sharing liability. I am not trying to apportion damages. Mr. Reese, you have liability but no culpability, and there's a difference. You're a joint tortfeasor with the people from whom you seek indemnity. When you have liability by reason of respondeat superior, you are a unified tortfeasor. There is one tortfeasor, not two, and you are part of that unified tortfeasor. You are merely seeking indemnification from the active tortfeasor because you have been required to pay the claim under a theory of quasi-contractual implied indemnity. That's what you're seeking, but you're still a tortfeasor. Excuse me. I would agree, except I started to, when you said active, you know, active versus passive, which is really what we were talking about with Hayes if you go back to 1990, all right, which is before we get to Gilbert in 1993. All over, when we're talking about Hayes and then we're talking about Ashley, we're talking about really active versus passive, all right. What I'm suggesting is that subsequent to Hayes, a 1990 decision, and subsequent to Ashley, a 1992 decision, and in between Roberson, a 1991 decision, subsequent to all that, implied indemnity based upon this notion that I am sued purely on a vicarious theory is not a damage-sharing theory at all. It's shifting a lot. That's right. It's a lot shifting. Don't say that you have no liability. You have liability as a tortfeasor. As a blameless principal. As a tortfeasor. Because your liability is only vicarious, you have an action for quasi-contractual implied indemnity. If you have any active liability at all, you lose that cause of action. We understand what it is. Agreed. Agreed. Agreed. The question that I have is, and it's quite simple, why do you suggest that the right to recovery does not depend upon an action arising out of the care of a patient? If we go to Travelers v. Bowman, 229 Illinois 2nd of 467, the court is referring to Armstrong and other cases involving indemnification. And the court says, we have long held that it is the nature of the plaintiff, and we're talking about the indemnity plaintiff, not the tort plaintiff, the indemnity plaintiff's injury rather than the nature of the facts from which the claim arises. That goes to Justice Cunningham's point about this medical malpractice being inextricably intertwined. But Travelers is telling us, you're looking at the nature of the claim, their liability to us, not our liability to the original plaintiff, not their liability to the original plaintiff that determines what limitation period should apply. 229 Illinois 2nd of 467. And then the court goes on to say, determine the true character of the indemnity plaintiff's cause of action. Armstrong emphasizes the focus of the inquiries on the nature of the liability, not the medical malpractice liability, because remember in Travelers we were talking about construction-related activity, and the court said we're not talking about the nature of a construction-related activity, but instead we're talking about the liability that the construction defendants owe to the bonding company, and that's based upon an obligation to indemnify subject to, in that case, the 10-year statute. Let me give you another passage from Hayes, and I'd like you to distinguish it. The third-party plaintiff, therefore, is seeking from the third-party defendant those damages proximately caused by the negligent acts of the third-party defendant, which the third-party plaintiff may be obligated to pay in the underlying suit. This leads us to conclude that an action for contribution is an action for damages under the medical malpractice statute of repose. You are seeking from these third-party defendants damages which you have been obligated to pay by reason of their actions in the underlying suit, and their actions arise out of medical care. If you read the sentence right above it, it says, the action for contribution apportions damages among the parties responsible for the original plaintiff's injury, and the contributor is obligated for the damages directly created by the contributor's negligent actions. We're talking, again, about damage apportionment based upon the hospital's liability to the plaintiff because it is subject to liability and tort, and the contribution claim is based on the theory it is paid more than its pro rata share of a common liability. No doubt about it, but does the action against the third-party defendants arise out of their care to a patient? And, well, for contribution purposes, I say yes. Why not for indemnity purposes? Because Travelers is saying Travelers doesn't have the arising out of language, number one. Number two, Travelers is a contract action. Travelers is not. It is a contractual contribution action. It is not an implied contribution action. And the medical malpractice statute of repose has this arising out of patient care language that was the linchpin of Hayes. I don't understand your argument vis-a-vis Travelers. Honestly, Justice Hoffman, I don't see the difference. I can't see how you can look at Travelers in this case and simply say, well, because Travelers is expressed, right? It's expressed, it's contractual. The indemnification is written into the contract, the obligation to indemnify. Here we have something which is implied. The Court is not going off on the idea that one is expressed and the other is implied, right? That's got nothing to do with whether it's a contract action or — Ultimately, it does. Yes. It's the whole key to Travelers, right? Well — Go back to where you were.  They're saying it's a written — Well, for the tenure, right. When you get to the tenure statute, but really, if you apply Travelers to other situations, I don't think you can simply look at Travelers and say, well, it's just limited to this one setting, and we're not going to try to apply it beyond its setting. I mean, I don't think that would be a fair interpretation of the case. But 13212, which is talking about actions for damages, all right, when you're talking about indemnification, and you can't simply look at this from the standpoint of, well, whether we're talking about contribution or if we're talking about indemnification, we're looking at the doctor's liability to the plaintiff. That's not what the nature of the claim is. That may be what the nature of a contribution claim is, right? I mean, that's what Hayes says. I'm not arguing against Hayes if we were filing a contribution claim. Well, we wouldn't be here. This is an implied indemnification claim. It's based on — you're looking at the wrong end of the claim. You're looking at the end of the claim arising out of patient care, the doctor's liability to the plaintiff, which is what you're doing with contribution because we're liable to the plaintiff, they're liable to the plaintiff, you have partial liability. That's not what implied indemnification is. Within the context of the facts of this case, you're claiming that your quasi-contractual obligation that you claim exists between McNeil and the doctor's employer, that that obligation is based on — is not based on the relative fault as with cross-claims among joint tort cases because you're claiming that you're not a tort fees. I mean, it seems like that's what you're saying, but it's instead based on the agreement between the docs and McNeil that insulates and indemnifies McNeil from any kind of med mal exposure based solely on the parent agency relationship. Yes. Is that what you're saying? Yes. Yes. In response to, I think, Justice Stein's question about this action for express indemnity versus actions for implied indemnity, that was the answer to the case called Robertson v. Bell v. Lannister. Right. We had a — They absolutely rejected the notion that express indemnity was the same, as quasi-contractual implied indemnity. They turned around and said an action for express indemnity, which is based on a contract that's governed by Section 13206 of the Code, actions for express indemnity are not affected by the Contribution Act. Contrary to Ashley, which later — I mean, you've got a disagreement in the appellate court. I'm reading from Ashley's. Okay. Yes. I'm reading the quote of Robertson from Ashley's. Okay. All right. And we've got a conflict there, don't we, as to express. And what I'm saying is whether it's express or implied, it doesn't fall under 13212. If you want to go — if you're going to follow Robertson — Mr. Bates, I'm still not understanding why you're calling this an implied indemnity. Why isn't this just your basic cross-claim in a malpractice lawsuit? What's the difference? Implied indemnity is recognized on a pre-tort relationship. The pre-tort relationship here is I'm the principal, the doctors are the agents. That is a recognized implied indemnity at least since Gilbert, or before Gilbert, I suppose. You can say American National — I'm sorry, American National versus Columbus Cuneo recognized that back in 1992, I believe, before Gilbert. That's your relationship, pre-tort duty. Let's stay with that for a minute. Yes. You are relying on a 1990 case, and I don't know when this agreement with the doctors and McNeil came into being, but — 2001, I think. Well, couldn't McNeil have just written into their agreement with the docs that they're going to indemnify them for this kind of thing? I mean, why isn't that just — you know, we wouldn't be here if that's the case. Is this like — is this an after-the-fact trying to fix something that wasn't fixed? Absolutely not, because sometimes — I mean, Roberson and Ashley, I suppose, illustrate the different — we would be here — I take it we would be here if we had written in an express indemnification claim, because I'd be arguing Roberson, and Justice Hoffman would be reading back, I suppose, from Ashley. They'd be relying on Ashley. And then you really would have a conflict to resolve between express — But, Mr. Reese, in the end result, you have to come back to the question, does the liability of the third-party defendants arise out of their care to a patient? If the answer to that question is yes, then the statute of limitations, the statute of oppose, is 13-12-8. If I could agree with how you started that sentence, I would agree with how you ended that sentence. If my point is, Travelers is telling us you don't begin by looking at the doctor's liability to the plaintiff. You're looking at the doctor's liability to us. The doctor's liability — I'm sorry. In Travelers, the defendant's liability would have been for construction-related activity if it was to the original plaintiff. I mean, granted it's express versus implied, but I don't think the form of indemnification changes whether or not under 13-2-12 it's timely or not. I mean, if it's express indemnification or implied indemnification, it's still their liability to us, not their liability to the original plaintiff. And if we're going to start to step back for just a moment and look in terms of the public policy that we're talking about here, look, this is not a situation of long-term exposure. It's not a situation of an open-ended liability. They were in the case from day one. Their liability to us is no greater than it would have been if — their liability would have been no greater. If they have no liability, we have no liability. But along those same lines, they were in the case from day one, and your client made a demand on them sometime two years before, and — February 1, 2006. — they basically ignored the demand. That's right, they ignored it. So why didn't you file your cross-claim then? Well, Your Honor, I think there are good reasons why you would not file the claim until you realize that in terms of settlement, you would have to pay and then have to chase them down for what they didn't pay up. But their argument is that there are good reasons for them to know exactly how much they have left in their policy year. If you're going to make a claim against whatever it is that they're going to have to indemnify you, they have a finite amount of money in that pot. And if it turns out that they're going to have to indemnify you, they would need to know how much is going to be left in that pot. So both sides are making the same good reason argument to do this earlier. Settlement's $3 million. We had to pay $1. They had $3 million in coverage. They paid $2. We're going back after them for the $1. They don't have any liability above the $1 that we paid on their behalf to extinguish their liability. So they're not on the hook for anything greater. And, by the way, you can hear this — it's applicable to a malpractice case because maybe in this case they have some more money left in the pot, but I think the statute is written to cover a broader swath of cases and not just this one. This is not — but this is not a case where you'd ever say that, well, there's a stale claim here. There isn't any stale claim here. I think we can certainly agree with that. Yes. Yes. My question is kind of off the scope here, but not totally off the scope. It's not like it was for lunch. You've been talking a lot about public policy. Yes. And I'll tell you, I feel very uncomfortable making decisions on public policy. I don't really think that's our role. Certainly the Supreme Court in the Hayes case spends a lot of time talking about public policy, and I understand their role here. But ultimately, certainly the determiners of public policy is the legislatures. That's right. We're talking about statutes here. That's right. Okay. So we have a statute that has been a scheme that has been in place for some time, a long time, and we have a case, Ashley, that has interpreted that scheme since 1982. So for 18 years, lawyers and hospitals and insurance companies have been living under the regime of Ashley. Yes. In the interim, the legislature has chosen not to modify any of these statutes. Now, the Supreme Court in the last year, Illinois Supreme Court, has had a number of cases in which they've discussed the idea of legislative acquiescence. So, for example, in the Rudy case, they say the legislator's failure to address Blake, which is an appellate court case, their holding at the time is an indication of the legislature's acceptance of this judicial interpretation of the statute. We've been living with this for 18 years. Why would we not apply this and say we must believe that the legislature wants us or the legislature meant when they developed the statutory scheme exactly what Ashley says that they meant. I think, Justice Tice, that is a good question. But realize that these indemnification claims, this has been an evolutionary process. All right? I mean, you can start with Hayes in 1990. That was only a third-party contribution claim. Then you get to Ashley. And we have some differences between Ashley and Roberson. And I would submit that those two, that Roberson is internally inconsistent and you really only have Ashley out there that addresses this situation. And as we've gone over, Ashley does apply Hayes. We're talking about a Supreme Court case. And Ashley's looking at the doctor's liability. That's what they're looking at. And what I'm suggesting is that when you get to Travelers, you have a different situation. But I agree. Big ideas. Our court in the Travelers case is not looking at medical malpractice and all the issues that are raised in that. And, again, when you read Hayes, so much of it is about policy and specifically policy about Med-Mal versus the issues that you see in Travelers. You don't see that kind of discussion there. In a contribution context because it was a contribution claim. It's a big picture. The Supreme Court in Hayes seems to be saying there's a big picture going on here. And it's about something to do with how medical malpractice cases play out beyond the original injured defendant, between the different parties. And that looking at this big picture, we're going to adopt certain rules. That seems to be for policy reasons. And that's what Hayes talks about. Ashley says we're buying the whole policy argument of Hayes and applying that more broadly in identification. And the legislature is accepting that apparently. But isn't the answer to that issue far more basic? The appellate court doesn't set public policy. Public policy is set in only three places. The Constitution, statutes of the State of Illinois, and the promulgation of the State Supreme Court. So there is no public policy to be redressed. There simply is an opinion of the appellate court, which is not in itself public policy. I honestly would have to disagree with it. I do think that when the appellate court is interpreting statutes, it is making public policy. Subject to Supreme Court review. Subject to Supreme Court review. We are applying rules of construction. It's been given to us by the Supreme Court, and we're laying it down. We're not deciding what the better course of action would or should be. That is for the Supreme Court to do. We don't do dumbness when we review statutes. We don't review based on we could have done it better. What did they say? What did they mean? Not why would it be better for it to be this way. The Supreme Court does that. I'm not asking you to rewrite the statute. I'm not asking you to decide what would be a better public policy. But I am saying, and I think you can find plenty of cases to bear this out, that public policy is found not only in the Constitution and not only in the statutes and not only in Supreme Court opinions, but also, I mean, Ashley is an appellate decision, and it's trying to apply. I'll give you a whole legion of Illinois Supreme Court cases that tell you that public policy only comes from three places. And they are very legion. They don't give that up to us. They have never delegated that to us. Ashley has interpreted this statute. You ask us now to deviate from Ashley based upon a Supreme Court decision that did not deal with implied indemnity. It dealt with express indemnity. It did not deal with the statute of repose involving language arising out of certain behavior. And it did not deal with the statute that talked about liability arising out of tort contract or otherwise. And Hayes made a big deal of the or otherwise language. He said that's what the legislature intended, this broad-based statute involving all actions for damages arising out of a doctor's treatment of a patient. I think, Justice Hoffman, respectfully, some of the distinctions you're drawing between travelers in this case, are right. I don't believe, I don't think some of those distinctions, they amount to distinctions without a difference. Whether it's expressed or implied, is that really? It's not Roberson. Roberson says there's a difference. Roberson says there's a difference. Right. Okay. Ashley says there isn't a difference. But I don't, I fail to see how you can look at the doctor's liability to us. All right. If it's an express, if it's written into the contract, the way Justice Cunningham asked me a few minutes ago. But somehow, if it's implied, all of a sudden we're back under 13212? Excuse me. I didn't say I agreed with the notion that express indemnity wouldn't be covered by 13212. All right. Me either. I think it is. Because I think the liability, whether it is implied or whether it is expressed, still arises out of patient care. Any way you look at it, that's Hays. And any way you look at travelers, you would have to. That's why, by the way, I think Ashley is the better statement of the law, vis-a-vis Roberson. And all I'm saying is that by that same, but if you're looking at travelers, all right, if you're looking at, I mean, you can't, the law didn't stop in 1992 with Ashley. If you're looking at travelers, and if you're looking at cases that lead up to travelers, you're back in the situation where it's construction-related, the underlying claim is construction-related activity, right? Isn't that what the defendants were arguing? And the court winds up saying that, no, you're not looking at their liability in the underlying case. You're looking at their liability to the indemnification plaintiff. I believe my time is up. But in conclusion, all I can say is that we are mindful that oral argument is a privilege and not a right. We are grateful for the chance to address these important issues this morning, because they do touch on public policy as well as on statutes and how statutes will be interpreted and based on travelers, based on cases cited in travelers, based on the arguments and our briefs, we ask you to reverse and give us the opportunity to prove our claim at trial. Thank you. Good morning. Julie Tischer on behalf of Dr. Zawacki and Suburban Surgical. And you have divided your time, so we're not going to go over the 15 minutes. Is that correct? Correct. In interpreting the application of 13212, the Hays Court placed a great deal of emphasis on the or otherwise language in 13212. No action for damages for injury or death against a physician, whether based upon tort or breach of contract or otherwise, arising out of patient care, shall be brought more than four years after the date of the occurrence. The Hays Court interpreted that to say, what the legislature is telling us is that or otherwise means any cause of action. I don't care what you call it. If it arises out of patient care, it's covered by the statute of repose contained in 13212. The problem with the argument, and it's an interesting argument, except for the 13214A, which is the subject of travelers, also contains the or otherwise language. It says actions based on tort contract or otherwise against a person for an act or admission of such person in the design, planning, construction of a property. So the 13214A, which was the subject of Hays, has the same or otherwise language. So what does that do to the or otherwise analysis in Hays? Well, I think the or otherwise analysis in Hays is buttressed by the arising out of patient care language. And Hays focused on that. This is an action arising out of patient care. We have a statute of limitations that dictates that all actions arising out of patient care are covered by this statute of repose. So we have both. The exceptions to 13212 are specifically spelled out in their disability and fraud. There's nothing about indemnification being accepted from that statute, whether expressed or implied. The legislature clearly intended the scope of 13212 to be very broad and to encompass any action arising out of patient care. There's no doubt that the implied indemnity action here arose out of patient care. We can see that from the language in McNeil's counterclaim against the physicians and suburban surgical. It all arises. I think you're answering my question. I wanted to pin you down a little more. Joseph Hopkins is speaking about 214A. So in the traveler's case, there's an underlying construction problem that liability flows from that, and then there's this indemnification based on that liability. And the court sets out 214A, but then basically says, well, no, that's not what this case is about. Bowman's liability to travelers does not, however, emanate from Carlson's breach of the construction contract. Rather, Bowman's liability emanates from the refusal to perform their obligations of indemnification. I could see why one could look at that argument and say, that sounds pretty close to what we have here. Why should we just, you know, the court clearly in Travers is saying, we're not looking at the original tort. We're looking at the relationship of the parties. Why doesn't that apply in our case? Why is it so different in this male setting? I don't think we can take that language in a vacuum. First of all, travelers, again, dealt with an express indemnity provision. That's the part that I just talked about doesn't apply. That's not what this is about, express versus implied. This is saying, yes, there's one kind of sexual limitation that has something to do with construction. We're not going to look at that because what we're focusing on is the relationship of the parties. That's what they say. Okay? So why doesn't that apply in the Med-MAL situation? It doesn't apply in the Med-MAL situation because we have a statute that specifically says for any actions arising out of patient care, 13.212 in the statute of repose applies. And that argument was addressed in both Hayes and Ashley. Ashley said that it doesn't matter if you call it an implied indemnity action. What's happening is you are seeking damages against a physician or a hospital or a health care provider. And under those circumstances, 13.212 applies. So I think in the Med-MAL situation, we don't need to look at this pretort relationship. But in the construction situation, we do. Why? I don't think it's that simple, Your Honor. I think we can't work backwards from Travelers. We have to look at this is an implied indemnity agreement arising out of patient care. The Travelers situation is an interpretation of an express written contract for indemnification. That's not the case here. Travelers doesn't talk about, and had the opportunity to talk about Hayes, Ashley, Roberson. Doesn't say we're going to extend this. Exactly. But they could have taken the opportunity. There is a construction case. There is a specific, like the Med-MAL statute, there is a construction statute. And they say we don't, even though that's more specific, you seem to be arguing a more specific maybe statute would trump the broader one. They reject that. They say, no, no, no. The fact that there is something specific about construction is not going to matter here. So why does the Med-MAL trump that? I'd go back to the fact that Travelers had the opportunity to say, and by the way, we extend this to implied indemnity actions across the board, including in medical malpractice cases. Why would they? It wasn't an implied indemnity action to begin with. It was an express indemnity action. And why would they veer out of the sphere of construction activity when that was the only subject in front of them? They wouldn't. I mean, they should, but they can do what they want. I suppose the question is really more basic. Your liability to the third-party plaintiff, does it arise out of patient care or does it arise out of a pre-tort relationship existing between you and the third-party plaintiff? It arises out of patient care. It arises out of patient care. But the essence of quasi-contractual implied indemnity in a vicarious liability circumstance is the pre-tort relationship that exists that gives rise to the duty to indemnify. I mean, that's where it comes from. Yes, but the underlying action arises out of patient care. There is no implied indemnity action here unless these physicians have provided patient care to the underlying patient. And that's exactly what the statute covers. But the underlying action is grounded in patient care. Yes. And we're trying to say that's what we're talking about. We're talking about the indemnification action. What is that grounded in? And one would argue that it's grounded in the relationship. There is no reason why McNeil is here other than the fact that it has this pre-tort relationship with an employee. And that was specifically answered and addressed in the Ashley decision. Ashley said, we're going to follow Hayes. Hayes extended this to a contribution action. We're going to follow Hayes because it makes sense that this is also extended to an implied indemnity action. And that's exactly what Ashley tells us. The facts in Ashley are virtually identical to those here. It was an implied indemnity action against a hospital for underlying patient care. And the appellate court there, this district appellate court, said we're going to extend that to implied indemnity actions as well. So, counsel, if Drs. Joyce and Zalicki were sued by a manufacturer of a piece of equipment that they used in their lab and that whole issue arose, blossomed into a lawsuit for which McNeil had to end up paying, you wouldn't quarrel with that. You'd think that's okay. I think the issue would come down to did it arise out of patient care. No. Just the example I gave. Doctors buy equipment and they negotiate with equipment manufacturers all the time. That equipment is used in the hospital. So the same situation would arise where if the doctor was sued by the manufacturer of the equipment and the hospital was also sued as their principal, you wouldn't have any objection to McNeil bringing their indemnification action using the five-year statute. Is that right? If the underlying action did not arise out of patient care. But that's not the situation here. I know, but I'm asking you, I'm asking the question that I want to ask just to see exactly what your argument is. Right. There's no question that this action arose out of patient care. I think the example you're giving me, there's no question it doesn't arise out of patient care. So you wouldn't object to that? You would think they're entitled to the indemnification in that circumstance? Not necessarily because of the breadth of the language in 13212, which says no action, whether based upon breach of contract, tort, or otherwise, against a physician or a health care provider can be filed more than four years after the occurrence complained of. Actually, the court covered a lot of what I was going to say in your questioning of other counsel, but there were a couple of extra points that I wanted to make. Could you wrap up your remarks? Yes. The Ashley Court addressed the issue as to whether an implied indemnity action should be considered differently because it's a quasi-contractual pretort relationship. And the Ashley Court stated that a suit for implied indemnity against a  patient's underlying lawsuit. So there's no question that the particular issue before this court has been addressed in Ashley. Therefore, we'd ask, since we have a statute of limitations directly on point, an Illinois Supreme Court decision and a decision from this district appellate court, applying Section 13212 to facts identical to those presented here, that you affirm the trial court's order dismissing the counterclaim for implied indemnity. Thank you. Good morning, Your Honors. Karen DeGrand on behalf of Dr. Joyce. I adopt counsel's argument, and I am just going to make a couple of brief comments. Justice Cunningham, you raised an interesting question about the issue of the manufacturer, and that actually is quite similar to the Johnson case. And we cite that case in our brief. We don't raise that particular point, but that was a situation where the manufacturer of dental implants brought a contribution action, not an implied indemnity action, but a contribution action against a physician, and that case was deemed to be within 13212. So, again, another case where the concept of patient care was considered quite broadly. Or contribution, in the sense that it's very much the case. That's correct, Your Honor. That's correct. Justice Tice, you asked the same question I was asking myself as I was reading through all these cases and trying to retrace Mr. Arisa's steps in making his trailer's analysis. And one distinction that I think is kind of a difficult opinion to get through in some ways is a little bit confusing as to the underlying facts. But there is a big difference between the reach of 13212. I think it's fundamentally different because of the policy reasons. But even putting that aside and trying to look at 13214, in the traveler's case, the express indemnity defendants were not sued for the failure to meet their contracts. It was their company that was the shareholder, and I think it was a husband and wife who had an interest in the company. They couldn't be sued on that contract, on that underlying contract. And I think that's a significant distinction. But I think that probably the greater distinction is the policy distinction and the fact, as counsel for Dr. Zawicki said, that the place to start here is Hays, not travelers. Ashley, the Ashley case, and I think also in Justice Cunningham, you raised this question at the outset of Mr. Reese's argument about, well, what about this policy about trying to avoid a long tail of liability? And Mr. Reese, I believe, was taking the position that's not the case here, but he came in at the same time. But his argument would, and if there were, if it were accepted, would mean that the hospital could have waited to sue until 2013, ten years after the surgery. And I don't think that's what the legislature had in mind at all when it decided or when it enacted 13212. Because, I'm sorry? Ten years. Ten years after the surgery because the settlement was in 2007 and then you had another five years on if you go to the 13205 statute. That's a long time. I don't think that's what the legislature had in mind. Justice Tice, I think you stole my thunder a little bit in raising the issue of the big picture. Where's the sea change here that should call for this court to depart from Ashley? And I have to submit there's no sea change that's been signaled by the legislature. There certainly is no sea change that's been signaled by the Illinois Supreme Court. And so I would ask that the court follow its decision and Ashley follow the Supreme Court's decision in Hayes and affirm the dismissal of these cases. Thank you. Thank you. Any questions for this? Briefly, Mr. Reese. I know the court has given a lot of thought to this matter so I will be very brief. Look, I don't care if you start with Hayes. It's where you wind up. It's where you finish. And I think you finish with Travelers. It's not where you start. It's where you finish. I really don't see as big a distinction in the language between 13214 and 13-212 as how you characterize this indemnification claim. 13214, okay, it's quoted in Travelers. Actions based upon tort, contract, or otherwise. To Justice Hoffman's point, both statutes have otherwise. Now, really, if the statute had said arising out of an act or omission in the design, would that be different, arising out of as opposed to the language actually used against? Is this case really going to turn on the language in 13-212 that talks about arising out of patient care? Whereas 13-214 talks not about arising out of patient care but instead just starts to enumerate the construction-related activities. I don't think that's what Travelers says. I don't think that's what any case leading up to Travelers says. I haven't questioned that before, but I'm going to now. How do you dispose of the phrase in Brooke that says that considering the authority, we construe arising out of patient care simply as requiring a causal connection between the patient's medical care and the injury? While the phrase does not need to be construed so broadly as to encompass but for causation, it clearly covers any injury that have their origin in or are incidental to a patient's medical care. Honest facts, Brooker. It's the original action. Okay? It's not even a recovery action. But they're interpreting the arising out of and the arising out of is critical to the Hays analysis. It's the lynchpin of the Hays analysis along with your otherwise language. But your otherwise language is the same. You're right. The otherwise language is the same. And all I'm saying is that in context, if you talk about Brooker, Brooker is talking about an original plaintiff, and I think the focus, as Travelers would suggest, is different when you're not talking about the original plaintiff, you're talking about, in this situation, the hospital. Again, I want to thank the Court for the time it has spent on this case. We think it's an important case. We ask you to reverse. Thank you. Thank you very much. This matter will be taken under advisement. This Court is adjourned.